UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMIE I.G.,<br><br>  Plaintiff,<br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | CASE NO. 3:24-CV-5273-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of her applications for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in her evaluation of Plaintiff's testimony about the severity of her symptoms. Had the ALJ properly considered this testimony, Plaintiff's residual functional capacity ("RFC") may have included additional limitations, or the ultimate determination of disability may have changed. The ALJ's error is, therefore, not harmless, and

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this order.

I. **Factual and Procedural History**

Plaintiff filed claims for DIB and SSI in February 2018, alleging disability beginning on May 28, 2017. Dkt. 8, Administrative Record ("AR") 294–306, 1954. Her applications were denied at the initial level and on reconsideration. AR 106–07, 138–39. She requested a hearing before an ALJ, which took place on October 25, 2019, with a supplemental hearing on November 5, 2019. AR 57–105, 197–201. Plaintiff was represented by counsel at the hearings. *See* AR 57, 83. On December 24, 2019, the ALJ issued an unfavorable decision denying benefits. AR 26–56. The Appeals Council denied Plaintiff's request for review. AR 1–6, 282–84. Plaintiff appealed to this Court, which reversed the ALJ's decision and remanded the case for a new hearing. AR 2034–43. Another hearing took place on November 16, 2023, at which Plaintiff's counsel requested the ALJ evaluate a closed period of disability from January 1, 2017, to September 30, 2021. AR 1948–74. On December 12, 2023, the ALJ found Plaintiff was not under a disability either for the requested closed period or from the original alleged onset date of May 28, 2017, forward. AR 1911–47. Plaintiff again appealed to this Court. *See* Dkts. 1, 5.

II. **Standard of Review**

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

**III. Discussion**

Plaintiff argues the ALJ erred in her consideration of Plaintiff's testimony about the severity of her symptoms, certain medical opinion evidence, lay witness testimony, and whether Plaintiff met or equaled a listing, leading to an erroneous RFC and step five findings. Dkt. 13 at 2. She contends the proper remedy for these errors is remand for further proceedings.[2] *Id.* at 19.

At step two of the sequential evaluation, the ALJ found Plaintiff had the severe impairments of diabetes mellitus, asthma, mild left shoulder osteoarthritis, fibromyalgia, obesity, bipolar personality disorder, and post-traumatic stress disorder ("PTSD"). AR 1917. Despite these impairments, the ALJ found Plaintiff had the RFC to perform light work with certain specific caveats. AR 1920.

    A. *Subjective Symptom Testimony*

Plaintiff contends the ALJ failed to properly evaluate her testimony about the severity of her symptoms. Dkt. 13 at 13. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison*, 759 F.3d at 1014. At the first step, the ALJ determines whether the claimant has presented objective medical

---

[2] Although Plaintiff asks that the Court credit her testimony as true, she does not argue that she is entitled to an immediate award of benefits. *See* Dkt. 13 at 16, 19.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* This evidence need not validate the severity of the alleged symptoms; rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

If the claimant satisfies this first step and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759 F.3d at 1014–15). "This standard is 'the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

The Ninth Circuit has reaffirmed that the clear and convincing standard requires the ALJ to make "specific finding[s]:"

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by the ALJ, the specific, clear, and convincing reasons also must be supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g).

In her initial applications, Plaintiff alleged she was limited in her ability to work by fibromyalgia, chronic fatigue, bipolar type 2, complex PTSD, anxiety, major depressive disorder, diabetes, asthma, arthritis, and paroxysmal hemicrania. AR 339. In a function report dated March 29, 2018, she wrote:

> My anxiety makes it impossible for me to consistently show [up] and perform in a work environment. It paralyzes me making me unproductive or unable to show up.
>
> My fibromyalgia causes widespread pain that leaves me bedridden at times and makes my attendance unpredictable.
>
> My PTSD causes flashbacks making me irritable, emotional, and unable to concentrate on work.
>
> Chronic fatigue makes me so tired I can barely function some days and my cognitive reasoning is affected.

AR 361, 368.

Plaintiff indicated she needed help with some aspects of personal care and reminders to shower and take medications. AR 363. She stated she was able to do dishes and laundry, but these tasks took a long time, and her fiancé encouraged her "to take breaks, go slow, but to keep at it." AR 364. She indicated she could drive and took short outings almost daily but could not go out alone because of anxiety around people. *Id.* She also stated she was unable to pay bills because her "anxiety over money ha[d] increased after some mistakes due to forgetfulness." AR 365. She listed hobbies and interests of art, her pets, television, and social media but stated she could not participate in these when she was depressed. *Id.* She talked to others online daily but rarely saw anyone in person. *Id.* The only regular social activity she listed was group therapy, which she attended weekly dependent on her mood. *Id.*

Plaintiff stated, "any movement [was] really difficult," and wrote she could only walk about 50 feet before needing to stop and rest for five to ten minutes. AR 366. She stated she

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

sometimes used a cane if needed. AR 367. Plaintiff wrote, "Some days are better than others, but I just am not consistent enough to hold down a job." AR 368.

At the October 25, 2019, hearing, Plaintiff testified about her mental health symptoms:

> I'm unable to control my emotions, . . . and I have a really hard time concentrating and keeping up with my duties in the workplace. When I'm manic, I get very angry and irritated and I have a hard time getting along with coworkers and managers. I have a hard time functioning and staying awake at work because I get very tired and fatigued easily. Some of my medications make me really tired and sleepy. And, I've gotten in trouble in the past for sleeping at work.
>
> And, I just have a hard time staying on top of what I'm supposed to be doing because I get distracted easily. And, I have panic attacks that cause me to not be able to function at work and I end up spending a lot of time in the bathroom crying.
>
> . . .
>
> I end up taking a lot of time off work to go to doctor's appointments and also to take care of my mental health. When I'm in a depressive state, a lot of times I just can't get out of bed to deal with the world. So, I end up calling out of work a lot.

AR 65–66.

She testified her medications were effective some of the time, but she still had "breakthrough depression and breakthrough manic episodes," as well as "breakthrough pain that lays me up" from fibromyalgia. AR 66–67. Some days, she was unable to leave the house or do anything and just stayed in bed all day. AR 70.

At the hearing on November 16, 2023, Plaintiff testified she started looking for work in April 2021 and began working part-time the next month. AR 1957. She had started taking a combination of medications that improved her symptoms somewhat. *Id.* Before that time, Plaintiff testified she was extremely emotionally unstable and had a hard time getting out of bed most days, taking care of herself, and interacting with people, to the point that public spaces triggered panic attacks. AR 1962. She also testified she spent a lot of days sleeping and in pain from fibromyalgia and chronic fatigue. *Id.* At that time, she was trying different medications

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

because she "wasn't on a good combination of medications yet" and "was sometimes such a zombie from the medications that [she] couldn't even figure out which end was up." *Id.*

The ALJ found Plaintiff's impairments could reasonably be expected to cause some of her symptoms, but the statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. AR 1922. The ALJ gave three primary reasons for discounting Plaintiff's testimony: (1) the allegations were not consistent with the overall medical records, (2) Plaintiff's treatment was generally conservative, and (3) Plaintiff's statements regarding her activities of daily living were inconsistent with her allegations of disabling impairments. AR 1930–31.

### 1. Consistency with Medical Records

The ALJ first found Plaintiff's allegations appeared "out of proportion and not as debilitating as alleged," and "[t]he objective evidence, in the form of physical/psychiatric examinations and digital imaging/testing, found in the medical record during the period of consideration suggests a level of function greater than one alleged by the claimant." AR 1992. The ALJ cited multiple medical records showing normal physical examination findings "that were inconsistent with the claimant's allegations of total disability:"

> Physical examinations often revealed normal respiratory effort and breath sounds, with no respiratory distress, wheezes, rales, or tenderness. The claimant's extremities were consistently warm and well-perfused with no edema. The claimant often exhibited good range of motion in all major joints with no tenderness or deformities. The claimant was consistently able to move all four extremities well with no focal deficits noted. The claimant[] exhibited 5/5 muscle strength[.] Additionally, the claimant often exhibited normal gait, motor, and sensation. Often, other than the claimant's obesity, no significant abnormalities were noted. Moreover, the claimant was consistently described as pleasant, alert, oriented, well-developed, well-nourished, and well-appearing.

*Id.* The ALJ also cited largely normal digital imaging results and psychiatric findings:

> [R]ecent psychiatric examinations revealed the claimant was alert and oriented; the claimant was adequately dressed and groomed; the claimant's attitude was cooperative with good eye contact; the claimant's speech was normal; the claimant's thought process was linear and goal directed, and there were no flight of ideas or looseness of associations; there was no evidence of hallucinations or delusions; and the claimant's judgment and memory were intact.

AR 1992–93.

"Although an ALJ may use '*inconsistent* objective medical evidence in the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt*, 53 F.4th at 498) (emphasis in original). "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Plaintiff's allegations of disabling limitations appear to be largely based on mental health symptoms and fibromyalgia pain. The Ninth Circuit has cautioned against relying on physical measures to discount fibromyalgia claims. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement.") (cleaned up); *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) ("[A] person with fibromyalgia may have muscle strength, sensory functions, and reflexes that are normal.") (cleaned up). Here, although the ALJ provided a lengthy overview of the medical evidence in the record, she did not provide any explanation for why the cited normal physical examination and digital imaging findings conflicted with Plaintiff's claims of debilitating pain. *See Reinertson v. Barnhart*, 127 F. App'x 285, 290 n.2 (9th Cir. 2005) (unpublished) ("One who suffers from fibromyalgia, a condition marked by 'chronic pain throughout the body,' is not necessarily in

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

'acute distress.'") (quoting *Benecke*, 379 F.3d at 590); *Brown-Hunter*, 806 F.3d at 489 ("[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.").

Similarly, the ALJ did not explain how the cited psychiatric findings conflicted with Plaintiff's allegations about her mental health symptoms, nor did she acknowledge Plaintiff's testimony that her symptoms varied from day to day. Although the ALJ is responsible for resolving conflicts in the evidence, she must explain her reasoning to allow for this Court's review. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020); *Brown-Hunter*, 806 F.3d at 492. Because the ALJ failed to "specifically identify the testimony she or he finds not to be credible" and "explain what evidence undermines the testimony[,]" *Holohan*, 246 F.3d at 1208, this is not a sufficiently specific, clear, and convincing reason for rejecting Plaintiff's testimony.

2.   <u>Improvement with Conservative Treatment</u>

The ALJ next found Plaintiff's treatment was limited to "generally conservative treatment options" and, in fact, the medical record appeared to suggest improvement in Plaintiff's condition with appropriate treatment. AR 1931.

Evidence of conservative treatment is an acceptable reason to discount testimony about the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels*, 874 F.3d at 667. Similarly, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Regarding Plaintiff's treatment regimen, the ALJ wrote: "Given the claimant's allegations of total disability, one would expect to see more progressive treatment options. The lack of progressive treatment for the claimant's alleged impairments demonstrated during the period of consideration appears to be more consistent with the residual functional capacity than with the claimant's allegations." AR 1931. One of the ALJ's cited records includes a provider's recommendation that Plaintiff continue using prescribed medication and continue psychotherapy. *Id.* (citing AR 856). The ALJ did not point to any evidence in the record that Plaintiff failed to follow these recommendations or that any provider recommended any more progressive treatment plan that was appropriate to Plaintiff's symptoms and conditions. Accordingly, the ALJ's finding that Plaintiff's treatment was conservative and not progressive does not constitute a specific, clear, and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.

Regarding Plaintiff's improvement in symptoms, the ALJ found "the medical record revealed that after her mental breakdown in January 2017, the claimant's condition had improved and remained fairly stable." AR 1931. The ALJ cited to a number of treatment records relevant to Plaintiff's mental health symptoms.[3] *Id.* First, she cited a note from a March 2017 medication management appointment indicating only that Plaintiff's PTSD was "stable." AR 855. At a March 2018 (erroneously cited as March 2019 by the ALJ) medication management appointment, Plaintiff stated her PTSD and mood instability symptoms "are chronic and are controlled." AR 999. The ALJ cited a February 2019 follow-up appointment for "unstable" diabetes at which the provider remarked Plaintiff had bipolar disorder but was "stable on current

---

[3] The ALJ also cited to records regarding Plaintiff's diabetes, coughing, and sleep, but the ALJ does not explain how these are related to the substance of Plaintiff's testimony. AR 1931.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1  medications." AR 1645. The latest citation, from an April 2019 initial visit with a new provider,
2  stated Plaintiff's depression-related symptoms were "controlled," but the provider also noted
3  Plaintiff's reports that functioning was "very difficult" and that she presented with a litany of
4  depression symptoms. *See* AR 1633.

5  First, the ALJ does not explain why these occasional remarks that Plaintiff's mental
6  health conditions were "stable" or "controlled" are inconsistent with Plaintiff's testimony about
7  her symptoms. Neither the ALJ nor any of these providers clarified the meaning of these terms,
8  so it is not clear whether they intended to note only that Plaintiff's symptoms were not worsening
9  or, as the ALJ interpreted, that her symptoms were resolved. *See Robinson v. Barnhart*, 366 F.3d
10 1078, 1083 (10th Cir. 2004) (noting a provider's references to a claimant being "stable" do not
11 necessarily indicate he believed she was sufficiently stable to return to work). Also, some of the
12 cited records are equivocal about Plaintiff's condition, such as the note that Plaintiff's PTSD
13 symptoms were "chronic" or the extensive list of Plaintiff's depression symptoms immediately
14 after noting her depression-related symptoms were controlled. *See* AR 999, 1633.

15 Further, other treatment notes from mental health providers throughout the relevant
16 period record suspected manic episodes, mood instability, depressed mood, anxiety, and poor
17 attention and concentration. *See, e.g.*, AR 1791, 1802, 1810, 1813, 1818, 1846, 1860, 2538,
18 2547, 2552, 2556. The Ninth Circuit has recognized that it is common for symptoms of mental
19 health impairments to "wax and wane in the course of treatment," and therefore:

> Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [their] symptoms. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11

*Garrison*, 759 F.3d at 1017. The ALJ did not explain why she found certain treatment notes more significant than others. Accordingly, this does not constitute a sufficiently clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.

### 3. Activities of Daily Living

Finally, the ALJ found Plaintiff's reported activities of daily living were inconsistent with her allegations of disability:

> Despite her impairments, the claimant reported that she is able to care for her personal hygiene independently, prepare meals, and perform household chores, to include laundry and dishes. The claimant indicated that she is able to care for her pets, to include a dog and cat. The claimant also reported that she is able to operate a motor vehicle and go shopping as needed. The claimant indicated that she is able to manage her personal finances, to include counting change, handling a savings account, and using a checkbook/money order. The claimant's hobbies include art and social media. She also indicated that she is able to utilize a computer, as she stated that she talks to others online occasionally (Exhibits 6E/1-5). The claimant also testified that she is able to go to Walmart and parties without issues. The record also revealed the claimant was looking for a job during the period of consideration, despite her impairments (Exhibit 4F/118). The performance of these activities is in direct contrast to her allegations. For these reasons, the claimant's allegations concerning the severity of her symptoms are not entirely consistent with the evidence and any limitations imposed by the claimant's impairments were accounted for sufficiently in the residual functional capacity.

AR 1931.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). However, the Ninth Circuit has recognized that not all activities are incompatible with disability:

> [T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [their] credibility as to [their] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

First, the ALJ's characterization of Plaintiff's stated activities does not fully reflect Plaintiff's testimony. As noted above, Plaintiff described needing reminders or assistance to care for personal hygiene. AR 363. Although she prepared meals daily, she stated her capabilities varied depending on her energy level, and on a "bad day," she would only be able to prepare a frozen dinner. *Id.* She stated doing dishes took her two hours with breaks and doing laundry took days with breaks. AR 364. The ALJ listed Plaintiff's hobbies but did not mention her statement that she cannot participate in these when depressed. AR 365. Plaintiff reported that she talked to others online occasionally, and she clarified in her hearing testimony that she had an easier time interacting with people online than in person. AR 70, 365.

Further, the ALJ listed Plaintiff's activities and then summarily stated that these activities were not consistent with Plaintiff's allegations about her symptoms without any explanation as to how the activities were inconsistent with Plaintiff's hearing testimony. Because the ALJ did not explain "*which* daily activities conflicted with *which* part of [Plaintiff's] testimony," this does not constitute a clear and convincing reason for discounting Plaintiff's allegations. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

For the reasons described above, the ALJ failed to provide any clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony. Thus, the ALJ erred. Had the ALJ properly considered Plaintiff's testimony, the RFC and

hypothetical questions posed to the vocational expert may have contained additional limitations. For example, the RFC and hypothetical questions may have included limitations reflecting Plaintiff's statements that she was unable to get out of bed some days due to her fibromyalgia pain and/or mental health symptoms. *See* AR 65–66, 361, 1962.

Because the ultimate disability determination may have changed with proper consideration of Plaintiff's testimony, the ALJ's error is not harmless and requires reversal. *See Molina*, 674 F.3d at 1115.

B.  *Remaining Issues*

Plaintiff further contends the ALJ failed to properly evaluate certain medical opinion evidence, lay witness testimony, and whether Plaintiff met or equaled a listing, and she argues that the RFC and step five findings are not supported by substantial evidence. Dkt. 13 at 2. As noted above, the Court concludes the ALJ committed harmful error in assessing Plaintiff's subjective symptom testimony and remand for further proceedings is appropriate. Due to this error, the ALJ must re-evaluate all the medical evidence on remand. Because Plaintiff may be able to present new evidence and new testimony on remand and the ALJ's reconsideration of the medical evidence may impact the assessment of Plaintiff's testimony, the ALJ must also reconsider this evidence on remand.

The Court has found the ALJ committed harmful error and has directed the ALJ to reassess the medical evidence and Plaintiff's subjective symptom testimony. Accordingly, on remand, the ALJ is instructed to re-evaluate the entire sequential evaluation process. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"); *Watson v.*

*Astrue*, No. ED CV 09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider two physicians' findings).

IV.     **Conclusion**

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled for the period at issue. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 26th day of December, 2024.

David W. Christel
United States Magistrate Judge